IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William L. Oliver, ) | C/A No. 0:13-653-TMC-PJG |
|          Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
|          Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, William L. Oliver ("Oliver"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In October 2011, Oliver applied for DIB and SSI, alleging disability beginning December 31, 2008.[2] Oliver's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 28, 2012,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

[2] Plaintiff, through counsel, later amended the date of alleged disability onset to July 2, 2011. (Tr. 270.)



at which Oliver, who was represented by Karl S. Weldon, Esquire, appeared and testified. The ALJ issued a decision on December 10, 2012 denying benefits and concluding that Oliver was not disabled. (Tr. 11-21.)

Oliver was born in 1970 and was forty years old at the time of his amended alleged disability onset date. (Tr. 211.) He has a college education as well as training as a certified financial planner, and has past relevant work experience as a financial advisor and investment planner. (Tr. 216.) In his application, Oliver alleged disability due to a seizure disorder. (Tr. 215.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July 2, 2011, the amended onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
   * * *
3. The claimant has the following severe combination of impairment[s]: seizure disorder and history of heavy alcohol use (20 CFR 404.1520(c) and 416.920(c)).
   * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   * * *
5. . . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He should never climb ropes, ladders or scaffolds. He should avoid all exposure to hazards such as unprotected heights, dangerous machinery, moving machinery, driving and bodies of water.
   * * *
6. The claimant is capable of performing past relevant work as a financial advisor. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
   * * *



    7.    The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-21.) The Appeals Council denied Oliver's request for review on February 12, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).³  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

---

³ The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUE

Oliver raises the following issue for this judicial review:

I.     Does substantial evidence support the finding that the seizure listing (11.02) is not met due to subtherapeutic anti-convulsant levels, when there was no investigation into whether idiosyncrasy in absorption or metabolism of the medications could account for the results?

(Pl.'s Br., ECF No. 13.)

## DISCUSSION

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added).  It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment.  20 C.F.R. §§ 404.1525(d), 416.925(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step 3); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same).  The



Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.

In this case, Oliver argues that the ALJ erred in evaluating whether Oliver met Listing 11.02. This Listing states:

> Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A.  Daytime episodes (loss of consciousness and convulsive seizures) or
> B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Additionally the introductory section provides, in relevant part:

> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption [or] metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00.



In determining that Oliver did not meet Listing 11.02, the ALJ found the following:

> In assessing whether claimant's seizures have occurred more frequently than once a month, in spite of at least three months of prescribed treatment, medical records from the emergency department of Greenville Memorial Hospital dated August 23, 2011 report claimant experienced a seizure, but stated he had been on Dilantin for about a week (Exhibit 1F, p51).  Records from St. Francis Hospital dated October 2011 report claimant was experiencing seizures despite taking Dilantin (Exhibit 2F). Medical records from St. Francis dated March 19, 2012 establish that claimant presented to the emergency department after a seizure.  Clinical laboratory reports however indicate that his level of Dilantin and valproic acid were under the therapeutic range (Exhibit 4F, pp.64-65).  These same medical records indicate claimant presented the next night, March 20th, after experiencing a seizure.  The March 20th medical record reports claimant's Dilantin level was increased last night. His medication levels were again determined to be subtherapeutic levels (Id,pp.7-11). Claimant presented to St. Francis on September 3, 2012 after experiencing a seizure. Lab results indicate his valproic acid was 39, again a reading below the therapeutic range (Exhibit 12F,p.5).  Thus, based on the aforementioned medical records, it is clear that claimant, on several occasions when he presented for treatment of a seizure, did not have a therapeutic level of medications in his system.  This range of subtherapeutic treatment almost spans the entire period of his alleged period of disability.  Therefore, I find that there is not sufficient evidence of the frequency of seizures in spite of three month periods of prescribed treatment in the record.  The record is devoid of evidence that claimant experienced the requisite frequency of seizures in spite of being on therapeutic levels of medications.

(Tr. 15.)

In support of his allegation of error, Oliver argues that the ALJ improperly found that he did not meet Listing 11.02 due to subtherapeutic anticonvulsant levels because the ALJ failed to investigate into whether idiosyncrasy in absorption of metabolism of the medications could account for the results.  Specifically, Oliver argues that the ALJ should have tried to obtain information from Oliver's treating source explaining his low levels or alternatively purchased an examination.  In further support of this argument, Oliver asserts that "[t]here is ample evidence in the record that Mr. Oliver was broadly compliant with his treatment regimen" (Pl.'s Br. at 9, ECF No. 13 at 9), and points to several medical records as well as his own testimony.  (See generally id. at 9-10) (citing



Tr. 40, 55, 366, 386, 406). Relying on <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1572 (11th Cir. 1990) and <u>Steele v. Barnhart</u>, 290 F.3d 936, 941 (7th Cir. 2002), Oliver argues that it is insufficient for the ALJ to find that Oliver did not meet Listing 11.02 based on subtherapeutic anticonvulsant levels without inquiring into the cause through Oliver's treating source or a consultative examination.

In response, the Commissioner argues that Oliver failed to meet his burden to prove that he met Listing 11.02. Specifically, the Commissioner points out that the ALJ gave great weight to the opinion of Dr. Hugh Clark, a reviewing state agency physician, who opined that Oliver did not meet this listing and noted that blood tests revealed subtherapeutic levels of seizure medication and that Oliver was not compliant with the treatment recommendations. (Tr. 21, 132.) Further, the Commissioner argues that the ALJ did not have a duty to "further develop[] the record regarding low blood drug levels where the claimant did not submit any evidence that the subtherapeutic levels were the result of an individual idiosyncrasy in absorption or metabolism of the drug." (Def.'s Br., ECF No. 14 at 13) (citing SSR 87-6; <u>Powell v. Barnhart</u>, 69 F. App'x 405, 408 (10th Cir. 2003); <u>Brown v. Bowen</u>, 845 F.2d 1211, 1215 (3d Cir. 1988); <u>Shinseki v. Sanders</u>, 129 S. Ct. 1696, 1706 (2009)). The Commissioner also points to medical records that she argues contradict Oliver's testimony that he took his seizure medication correctly and did not miss a dose in the past two years. (Def.'s Br. at 13-14, ECF No. 14 at 13-14) (citing Tr. 309, 330, 465-66, 494). The Commissioner argues that Oliver's position that the ALJ should have further developed the record is undermined by discussions with the ALJ where Oliver's counsel indicated, when asked by the ALJ if the ALJ should obtain any other evidence, that he did not think it was necessary for the decision. (Def.'s Br., ECF No. 14 at 14) (citing Tr. 65).

In considering the parties's arguments, the court observes that Social Security Ruling 87-6 provides guidance on evaluating low anticonvulsant blood levels. This ruling states, in relevant part, that

> [t]he predominant reason for low anticonvulsant blood levels is that the individual is not taking the drugs as prescribed. In extremely rare cases, individual idiosyncrasy in absorption or metabolism of the drug causes therapeutically inadequate anticonvulsant blood levels. The reasons for abnormal absorption or metabolism of these drugs is linked to the individual's clinical condition and would have to be recognized by the treating physician in his or her efforts to obtain control of the seizures. Therefore, a finding that low anticonvulsant blood levels are caused by idiosyncrasy in absorption or metabolism must be based on specific descriptive evidence provided by the treating physician.
>
> When reported blood drug levels are low, therefore, the information obtained from the treating physician should include an explanation as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Unless convincing evidence is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself inadequate, the conclusion should follow that the individual is not complying with the treatment regimen. Similarly, in cases in which there is convincing evidence of intermittent noncompliance, including seizure activity because of alcohol abuse, little weight should be given to sporadically obtained anticonvulsant blood levels, even if they are in the therapeutic range. In all cases, however, blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance with the prescribed treatment.
>
> Blood drug levels reported during the regular course of treatment are usually of more probative value than evidence obtained for the purpose of disability evaluation which shows the blood drug level at one point in time. However, information concerning current blood levels should be purchased when the existing evidence does not contain blood drug levels and a favorable decision appears to be indicated.

SSR 87-6, 1987 WL 109184, at *3.

Upon consideration of the parties' arguments as well as controlling and persuasive law, the court finds that Oliver has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law. The parties do not appear to dispute that the record



supports the ALJ's finding that during almost the entire period of Oliver's alleged period of disability, when he presented for treatment of a seizure, he generally did not have a therapeutic level of medications in his system.

The parties' divergent positions appear to rest on a disagreement over the ALJ's duty following this determination as well as a disagreement as to whether the record supports a finding that Oliver was compliant with his medications. Importantly, despite the parties disagreement as to whether the record supports a finding of compliance or noncompliance, the ALJ's opinion does not appear to include a specific finding on this issue. In fact, the ALJ later in the decision simply states that Oliver "was not receiving therapeutic levels of medications" and that "it is clear that through claimant's testimony and medical records that he was not receiving sufficient levels of medications to effectively treat his condition." (Tr. 19.) The ALJ also states that he "do[es] not find that claimant has been properly treated for his seizures since his amended onset date." (Tr. 21.)

Similarly, the court finds Oliver's reliance on Lucas v. Sullivan, 918 F.2d 1567 (11th Cir. 1990) and Steele v. Barnhart, 290 F.3d 936 (7th Cir. 2002) to be unavailing. Although not controlling, even if the court were to find these cases persuasive, they are easily distinguishable from Oliver's case. Unlike both these cases, the ALJ in this case did not rest his findings in part on any alleged noncompliance or intermittent noncompliance. Further, in Lucas the ALJ found evidence of intermittent noncompliance and concluded this was the primary cause of the claimant's seizures despite evidence indicating idiosyncrasies in absorption and/or metabolism of her medication, noting varying therapeutic and below levels during a twenty day hospitalization. See Lucas, 918 F.2d at 1572. Also unlike Steele, the ALJ in this case had current evidence showing that Oliver did not have a therapeutic level of medication in the claimant's blood. Cf. Steele, 290 F.3d at 940-41.



To the extent that Oliver's position rests on an argument that because Oliver's medical records demonstrated that he generally did not have a therapeutic level of medications in his system, the ALJ had a duty or obligation to obtain evidence or further develop the record to determine why his levels were low, the court disagrees. As stated above, Oliver bears the burden to demonstrate that he is disabled at Step Three of the sequential process. Bowen, 482 U.S. at 146; see also 20 C.F.R. § 404.1514. Moreover, Oliver was represented by counsel at the hearing who did not suggest or provide support for his present speculative position that Oliver's anticonvulsant blood levels may have been caused by idiosyncrasy in absorption or metabolism. See, e.g., Powell v. Barnhart, 69 F. App'x 405, 408 n.1 (10th Cir. 2003).

Finally, to the extent that Oliver relies on the fact that the ALJ did not deny him benefits based on 20 C.F.R. § 404.1530, which provides that benefits may be denied for failure to follow prescribed treatment, in support of his position, the court finds this argument unpersuasive. This regulation is not applicable unless Oliver is first found to be otherwise disabled. See 20 C.F.R. §§ 404.1530, 416.930; SSR 82-59, 1982 WL 31384, at *1; see also SSR 87-6, 1987 WL 109184, at *4 (indicating that if a claimant does not meet Listing 11.02 but may be found disabled because his residual functional capacity does not allow him to work, the ALJ must address the issue of failure to follow prescribed treatment).

**RECOMMENDATION**

For the foregoing reasons, the court finds that Oliver has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 14, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).